The People of the State of New York, Plaintiff, *v.* Philo
Blood and Others, Defendants.

Supreme Court, Fulton County, December 29, 1924.

**Penalties — action to recover penalties for violation of Conservation Law,
§ 190, subd. 6, providing that taker of deer may transport carcass if
evidence of sex is not removed — defendants were members of hunting
party of twenty-one — deer was killed by someone in party but not by
defendants — carcass was divided among hunters — defendants received
small part — defendants not liable.**

The defendants are not liable for the penalties imposed for the violation of
subdivision 6 of section 190 of the Conservation Law which provides that the
taker of deer may transport, when accompanying the same, or may transport
by common carrier one carcass or part thereof at any one time, provided that
in either case evidence of sex has not been removed from such carcass or part
thereof, since it appears that the defendants were members of a hunting party
composed of twenty-one persons; that someone in the party, but not the
defendants, killed a deer that might lawfully be taken; that immediately there-
after the carcass was dressed and the meat divided among the hunters; and
that each of the defendants received a few pounds of the carcass.

Action to recover penalties for violation of subdivision 6 of
section 190 of the Conservation Law.

*Carl Sherman, Attorney-General [Edgar V. Bloodough, Deputy
Attorney-General,* of counsel], for the plaintiff.

*P. H. Murphy [J. Keck* of counsel], for the defendants.

Angell, J.:

This action is brought under the authority of the Conservation
Commission to recover from defendants penalties for violation of
section 190, subdivision 6, of the Conservation Law, as added by
Laws of 1920, chapter 520. This statute provides as follows: " The
taker may transport, when accompanying the same, or he may trans-
port by common carrier   * * *   one carcass of a deer or part
thereof at any one time, provided that in either case evidence of
sex has not been removed from such carcass or part thereof."

The facts are not in dispute. It appears that on November
11, 1923, during the open season for deer hunting, defendants,
who reside in the city of Johnstown, Fulton county, went to the
northern part of that county in the Adirondacks on a hunting
expedition. They had made some arrangement for guides to meet
them at a certain point, but the guides did not appear. Other
hunters gathered in the same vicinity. Finally the different parties,
comprising twenty-one men in all, agreed among themselves that
they would start out in search of deer. and that any deer obtained

by any one of the various parties should be divided among all. As a result of this plan a deer was killed having horns not less than three inches in length, which was a deer that might lawfully be taken. No one of the defendants killed the deer, and their statements that they did not know who killed it or the names of the other men who had joined them, stand undisputed. The deer was taken to the public highway, where it was dressed and divided among the twenty-one who were parties to the hunting arrangement, each of the defendants receiving a small portion weighing only a few pounds. Two of defendants put their portions in their pockets, and the other two put theirs in a game bag belonging to one of them. As defendants were on their way home they were stopped by a game protector, to whom on request they showed the venison which they had in their pockets and in the game bag. There was, of course, no evidence of the sex of the deer attached to these small portions. Subsequently defendants were sued for penalties for transporting venison without evidence of sex being attached thereto.

The action was tried before a jury, but at the conclusion of the evidence each side moved for a directed verdict. There being no dispute as to the facts, but only a question of law as to whether the acts of the defendants were a violation of this statute, the court took the case for determination.

The statute provides that " the taker " may transport. " The taker," as used in this statute, means the person who has killed the deer. Thus subdivision 4 of the same section (190) provides that " A person may *take* one such wild deer in an open season." All through the Conservation Law the word " taker " is used with this meaning. Who was the taker of the deer in question? No one knows. All the record shows on this subject is that one of the twenty-one men who were parties to the agreement killed this deer, but that no one of the defendants did. The person who killed it was " the taker," and this statute was plainly intended to cover that person. The taker, as used here, may also, perhaps, include any one in the immediate party of the killer, though the provision in subdivision 4, that a person may take one wild deer applies only to the one actually slaying it. But, assuming that each one of the immediate party of the slayer could be called the taker, is it reasonable to extend that to all the twenty-one, some of whom (including, for anything the proof shows, all these defendants) might have been several miles away and entirely unconnected with the killing? It would scarcely seem that they could properly be called the taker of this deer any more than any other hunter in the woods that day. The deer was brought out to the roadside,

where it was divided. There it passed out of the custody and control of the taker. Defendants had small portions of it which they were taking home for their individual consumption. In so doing they were not violating this statute. They were in the same position they would have been in if the taker, instead of dividing the deer by the roadside, had brought it to a market or to his own home and there cut it up and divided it among his companions. If he had done this, it could not reasonably have been contended that each person taking a chop or steak cut from the deer to his home was " the taker " of this deer, and a violator of this statute because no evidence of sex was attached to the portion each took. If it were otherwise, it would make each one possessed of a portion of this deer a violator of the law. That is not the purpose or intent of the statute.

Furthermore, the statute provides that the taker when accompanying a deer, or a portion of it, may " transport " it, if evidence of sex is attached. The word " transport " as used in this statute does not seem to me to cover the act in which defendants were engaged. The statute contemplates two methods of bringing out a deer that has been killed — one by common carrier if a permit therefor has been obtained from the Conservation Commission, and the other by transporting by automobile (as is commonly done), or by other means — the person who has taken the deer being with it. If a whole deer, or a portion thereof large enough so that it would be possible to have evidence of sex attached, were being brought out, that is within the contemplation of the statute. But a small portion carried in a pocket is not. The word " transport," in its usual signification to the average mind, means something more formal than this — it means to transport goods or troops or packages by a common carrier, or through an established agency. Or, in such a case as this, a person is transporting if he himself brings out a deer or a substantial portion thereof, which, if he were not bringing it himself, would have to be shipped or transported through some recognized agency for that kind of business. This construction is borne out by the lexicographers, by the use of the word in section 178 of the Conservation Law, which provides for the transportation of game, and by *People* v. *Suydam* (204 N. Y. 419) and *People* v. *Montena* (139 App. Div. 421), wherein the courts consider the scope of the word as used in section 178 (formerly Forest, Fish and Game Law, § 103). If, for example, a person goes on a journey his trunk may properly be said to be transported, but it would be unnatural to say that he was transporting his pen knife or other personal articles which he had in his clothes. Assume that a hunter had lawfully taken a deer, had brought it to a market

in his home town, and had told the marketman that he wanted it cut up so that he could give certain portions of it to his friends. If later he had obtained these portions from the market and undertook to deliver them at the homes of his friends, he would, if the theory of plaintiffs be correct, have been guilty of a violation of the statute. The Legislature in enacting this provision must be presumed to have used the words in it in their ordinary and usual sense. It is not reasonable to suppose that it was the legislative intent to include in the meaning of " transport " every act of carrying in small parcels, where in the very nature of things it is impossible for any evidence of sex to be attached.

Likewise it may be said that defendants were not " accompanying " these portions of the deer, in the sense in which that word is used in the statute. A person may not reasonably be said to be " accompanying " that which he has in his pockets. The contrary is true if he is bringing, in an automobile, from the woods a deer which he has taken or a portion of the deer of sufficient size so that it is physically possible that evidence of sex may be attached. But if he stops at a store and buys a small article which he puts in his pocket, it can scarcely be said that, in the ordinary conception of the term, he is " accompanying " that article to his home. To attach this meaning to the word it is necessary to give it an interpretation broad enough to cover any act of possession. That this was not the intent of the Legislature is clear. Thus in subdivision 2 of section 182 of the Conservation Law it is provided that " A person who buys, sells, offers for sale, takes, possesses, * * * " any game in violation of the provisions of the statute, is guilty of a misdemeanor and liable to a penalty. Again in section 191, as amended by Laws of 1920, chapter 520, it is provided that " Wild deer or venison lawfully taken may *be possessed* from October fifteenth to November twentieth," which is five days after the close of the open season. If the Legislature intended under section 190 to make it unlawful to possess venison under the circumstances herein stated, it would have been a simple matter to say so. It has specifically provided penalties for the possession of it under other conditions. This statute, being penal in its nature, should be strictly construed. Defendants should not be held liable under it unless they clearly come within the provisions.

The purpose of the statute in question, which is to prevent the killing of does, is unquestionably laudable and necessary, and in a case where there was evidence of a design to violate it (though intent is immaterial), such as might be shown by the possession of a large quantity of sliced or cut up venison, so that the inference would be open that this was done in order that the sex of the deer

could not be determined, a different question would be presented. But that, it seems to me, is not this case. On the contrary, it is clear, for the reasons heretofore given, that defendants in taking home these small pieces of venison from a deer which they had not killed, were not transporting or accompanying it within the meaning of the statute, and that no one of them was " the taker " of it. Consequently they were not violating the statute under which this action was brought. Any other construction, as applied to the facts here proven, involves us in absurdities, and in strained, unnatural and forced meanings of usual, ordinary words, which meanings could not have been in the contemplation of the Legislature.

The complaint is, therefore, dismissed.

Ordered accordingly.